## Case No. 9,292.

### MATTHEWS v. WADE.

[1 MacA. Pat. Cas. 143.]

Circuit Court, District of Columbia. Sept., 1850.

PATENTS — INTERFERENCE APPEALS — AUTHORITY OF JUDGE TO STRIKE OUT REASONS OF APPEAL —REHEARINGS BY COMMISSIONER—FOREIGN PATENTS.

[1. The filing of the reasons of appeal is a proceeding in the patent office, over which the judge has no control, and he cannot order any of them stricken out; but when brought before him on appeal, if invalid, he will overrule them.]

[2. Under the act of 1836, §§ 7, 8 (5 Stat. 119), the power of the commissioner is not exhausted by once deciding a question of interference, and giving notice to the parties; but where cause is shown, as that material evidence was not received in time for the hearing. he may permit the unsuccessful party to withdraw his application, and refile it, and then declare anew an interference between the same parties.]

[Cited in brief in Fassett v. Ewart Manuf'g Co., 58 Fed. 364.]

[3. An application which, by permission of the commissioner. is withdrawn, and instantly refiled in the same words, must be regarded as a continuing application, so that a foreign patent, issued for the same invention more than six months before such refiling. but after the original filing, will not prevent the issuance of a patent.]

[4. The questions of the practicability and usefulness of the invention are within the discretion of the commissioner, and are not made the subject of an appeal, in a case of interfering applications.]

Appeal from the decision of the commissioner awarding priority of invention to Moses M. Matthews in respect of the "application of and substitution of rosin for linseed and other oils in the manufacture of printing ink."

Opinion of Reverdy Johnson, Attorney-General:

I have carefully considered the questions submitted to me in the case of Wade v. Matthews, conflicting claimants for a patent for applying rosin oil in the manufacture of printers' ink. The facts are these: In 1848 Wade applied for a patent, but before it was issued the like application was made by Matthews. An interference was then duly declared and notice given to the parties as in such case required. Neither party being present on the day fixed for the hearing, and no evidence received, the then commissioner (Mr. Burke) decided the priority of invention in favor of Wade, because of the priority of his application; and notice was given to Matthews that unless he appealed from the decision by a limited day a patent would be issued accordingly. An appeal was not taken; but before the time limited for taking it Matthews withdrew his application, received back his deposit of twenty dollars, and filed a new application in the words of the first. The commissioner declared an interference, and gave notice to the parties, as in the case of the original interference. Wade insists that the decision of the commissioner, upon the former application is a bar to the present, and that he has a right to a patent.

Your first inquiry is, "Can the unsuccessful party, under the circumstances, withdraw his application and refile it, and the * * * commissioner declare an interference? A proper answer to this question depends altogether, I think, upon the construction of the seventh and eighth sections of the act of July 4th, 1836, "to promote the progress of useful arts." 5 Stat. 117. There are no other provisions affecting it. If by these the entire authority vested in the commissioner is executed when he decides in a case of interference in favor of either party, and his duty, therefore, in the issuing of a patent is but ministerial, then the course pursued in this instance in declaring a second interference as between the same parties was illegal, and Wade is entitled to his patent. It is certainly true that a special authority once fully exercised is exhausted; and it is equally true that it can only be exercised in the way prescribed. It is also clear, as a general rule, that in such jurisdictions powers not delegated are not to be implied; but it is equally clear that where not expressly prohibited, they may be implied if necessary to the discharge of a power which is delegated. No authorities are cited for these propositions, as they are familiar and perfectly well settled. What, then, are the powers in a case like the present of the commissioner, and when are they fully exhausted? The power to issue a patent is under the seventh section of the act of 1836, and it is only authorized to issue when, "upon examination, it shall appear to him" that the same had not been invented or discovered by any other person in this country prior to the alleged invention or discovery thereof by the applicant, or that it had not been patented or described in any printed publication in this or any foreign country, or had not been in public use or on sale with the applicant's consent or allowance prior to the application.

Being satisfied as to these several facts, and also satisfied that the invention is sufficiently useful and important, it then, and only then, becomes his duty to issue a patent. Under this provision it is manifest that the whole subject rests in the judgment of the commissioner until the patent is actually granted. It is that grant which finally decides the question submitted to him; and by the plain words of the law his authority to make the grant depends upon his being satisfied, at the moment he does make it, upon each one of the points made by the law necessary to the validity of the application. The remainder of the section only provides a mode in which, when the decision is against the applicant, he may have it reviewed by another tribunal, being by that act a board of examiners, and now, under the eleventh sec-

tion of the act of March 3, 1839 (5 Stat. 353), the chief judge of the District of Columbia. As far as this section of the act of 1836 is concerned, it is clear that the authority of the commissioner is not only not exhausted by any preliminary or intervening opinion he may form on the question of title to patent before he issues the patent, but that his duty is not performed, and, on the contrary, is violated, if at the time he issues it he is not satisfied upon the facts necessary under the law to the validity of the claim. Let us now see if in this respect there is any difference between the seventh and eighth sections of the act. I think not. In the eighth, as well as in the seventh, in my opinion, the power of the commissioner is not extinguished and the matter put beyond his reach by anything to be done by him short of the issuing of the patent. The proceeding in the present case was had under the eighth section. That section provides that when an application for a patent is made which in the opinion of the commissioner would interfere with any other patent for which an application may be pending, or with any unexpired patent which shall have been granted, it shall be the duty of the commissioner to give notice thereof to such applicants or patentees, as the case may be; and if either shall be dissatisfied with the decision of the commissioner on the question of priority of right or of invention, on a hearing thereof he may appeal from such decision on the like terms and conditions as are provided in the preceding section; and the like proceedings shall be had to determine which, or whether either, of the applicants is entitled to receive a patent as prayed for.

It will be seen that this provision, as far as the act of the commissioner is concerned, refers to but one of the grounds upon which he is to be satisfied under the seventh section, and that but partly; that is to say, the ground of priority of invention between the applicant and any other applicant whose application is pending, or any unexpired patent, although other conditions required by the prior section are here omitted. Was it, then, the purpose of this section to limit the authority of the commissioner, or rather to limit his duty as that was prescribed by the previous section? Under that I think it is clear that at the moment of issuing the patent his authority exists in full force, and his duty in equal force, to patent or not, as he may be satisfied of the title. Does this latter section authorize him to issue a patent to one who he not only is not satisfied is entitled to it, but who he may be satisfied is not entitled to it? I think not. The title to patent depends on the seventh section. Its provisions must be found to give it; and up to the period when, under these, the commissioner is empowered, it is made his duty, to decide for or against the application. He must have like authority, and it must be equally his duty to decide under the eighth section.

If this was not the case, this result would follow: that the act in one section would make the claim depend upon the judgment of the commissioner at the time of issuing the patent, and in the other, though the reason was precisely the same, would make it wholly independent of what might at that time be his opinion. The act, I think, is not liable to such an objection. The two sections are to be considered together, although they look, in part, to different states of things. In connection with the application, they look to the same end—the granting a patent only to the party entitled to it under the act. The latter is not to be construed to repeal that part of the former which does not only not empower the commissioner to issue the patent unless he is satisfied upon each of the conditions upon which it makes the claim to rest, but, on the contrary, makes it his duty, unless so satisfied, to refuse it. But what places this view beyond doubt is that the eighth section contains no authority to issue a patent at all. It contains no provision which, in words or by implication, can be construed to give the power. The patent, then, is issued under the authority of the seventh section, and can only go to him who, at the time it is issued, the commissioner is satisfied is entitled to it under the terms of the section. These, as already stated, so far from authorizing him to grant when he is not satisfied as to priority of invention, prohibit his granting it.

The whole object of the eighth section was to have the applicant and another applicant or patentee holding an unexpired grant for the same invention, as to priority of invention between themselves, as one of the means of satisfying the commissioner upon one of the points specified in the previous section. But it was not its purpose to limit his authority as to time nor to change his duty, as these were regulated by that section. They continue, as I think, to govern both, and are not performed, so as to put the subject beyond his control, until the patent is actually granted; nor do I see that the inconvenience or injustice supposed by the counsel of Wade to result from this construction will ensue. It is thought that by allowing the course adopted in this instance the controversy could never be brought to a close. But this is not so. The commissioner has control of the whole matter. When satisfied of the title, he will issue the patent; and it is his duty to issue it. The permission to withdraw an application in such case will be granted or not, as the commissioner may be satisfied or not. It is no answer to this to say that it leaves the right of parties to depend upon the discretion of the officer, and not upon the law. His discretion is not a loose and undefined one, which he may use in each case merely as he wills or desires. It is a legal discretion, or rather a judgment, founded upon the law, and duly to be exercised where, in his opinion, the law demands it This de-

mand is made when the commissioner is called upon to issue a patent to an applicant who he is either satisfied is not entitled to it or doubts as to the title under the only section of the law which gives him authority to issue it—the seventh section. But the delay and inconvenience suggested which might be the consequence, in some cases the injustice, which might result to the true inventor or to the public from the opposite construction, commends this to adoption. Whilst in a spirit of true policy the act carries out the constitutional provision for the promotion of the "progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries," it at the same time guards the public against abuse, by requiring the commissioner at the very last moment to be satisfied that he is securing the real author or inventor the exclusive right to his own discovery, and not sanctioning an invalid or fictitious claim, and thereby furnishing the means of annoying and injuring the public. I have no doubt, therefore, that the commissioner, in the present instance Mr. Burke, had authority to receive the second application of Matthews, and that it was his duty so to do under the circumstances, and that the opinion he gave upon the former application, no patent having issued to Wade, is not a bar to such a proceeding. I decline for the present answering the second question, so far as it is not covered by this opinion, as it is not called for by the present case; but if you think that an answer is required for the proper execution of the duties of the commissioner, I will give it at a moment of more leisure than I now have.

Upon the receipt of this opinion at the patent office, the Hon. Thomas Ewbank, who had in the meantime become commissioner of patents, appointed a new day of hearing upon the testimony already taken, both parties having stipulated to that effect. Before the day of hearing, Wade moved for a further postponement of the day of hearing, to enable him to take new testimony, accompanying the same with affidavits of the witnesses to be called, setting forth the facts expected to be proved. This motion was denied by the commissioner, upon the ground that the proposed testimony, if admitted, would not materially affect the decision. Final decision was had in due course upon the merits of the controversy, awarding priority of invention to the said Matthews; and thereupon the present appeal was taken to the judge, praying him to reverse the said decision of the commissioner and all other acts of the office, down to the granting of letters-patent to the said Wade, and assigning ten reasons of appeal, as follows: 1. That the commissioner of patents having, on the 15th of February, 1849, decided a question of interference previously declared between the claims of Wade and Matthews to a patent for the manufacture of printers' ink by the use of rosin oil, and having given notice thereof to the parties that unless Matthews appealed by the 10th day of April then next a patent would be granted to the said Wade, and there having been no such appeal, the commissioner's power over the subject was spent, and the decision could not be reconsidered or renewed by him, and he therefore had no power to act in the present case. 2. That the commissioner was unauthorized by law to allow Matthews, after the question of interference was decided against him, to withdraw the application and receive back any portion of his deposit. 3. The question of interference in this case having been declared in favor of Wade, it is res adjudicata between the parties, and it is final and binding upon them both, and can only be reversed upon appeal to the chief justice, or by a proceeding in a court of equity of the United States. 4. The commissioner having acted upon and rejected Matthews' application, had no power to receive and act upon it again. His authority to act upon it having been once executed, was spent and gone, and he could not execute that power a second time. 5. If the commissioner had power to grant a rehearing in his discretion, he could not lawfully do so without allowing the party in whose favor the decree had been made to be heard on the question. 6. The commissioner erred in not granting the postponement asked for by Wade. 7. A patent having been lawfully decreed to Wade, which decree has never been annulled or vacated or appealed from, and having been challenged to this proceeding as a patentee, the law requires, and it is the duty of, the commissioner to issue one to him, as previously decreed. 8. The commissioner is forbidden by law to issue a patent to Matthews, because it is clearly and indisputably proved, and not contradicted or denied, that a patent was issued for this same invention in England in July, 1848, and in France in August of the same year—both more than six months before Matthews made his present application. 9. The inventions of Wade and Matthews are not identical, and Matthews' is not one which he can use, nor is it one which he has reduced and put in practice, or which is useful. 10. The evidence clearly shows that Wade, and not Matthews, is the first inventor of the improvement claimed, and the commissioner should have so decided; and for that reason his decision should be reversed.

At the hearing, counsel for Matthews moved to strike the first eight and latter part of the ninth reasons of appeal from the record, upon the ground that they involved questions not within the jurisdiction of the judge. The judge being in doubt as to his power to strike reasons of appeal from the record, directed argument to proceed upon the entire case, reserving his decision upon the motion until the final decision of the case.

The Commissioner in Reply: The questions raised in the first, fourth, and seventh reasons of appeal were involved in the opinion of the attorney-general; and as that officer is provided to advise and give opinion in all legal questions that may arise in the executive departments of the government, the questions are not properly before the court. There are two prominent acts of the commissioner which frequently occur in the discharge of his official duties: the one is called the rejection of an application, and the other a decision on an interference—each of equal importance to the parties interested. and neither necessarily final nor decisive of the issue of a patent. It is in accordance with this view that the practice of the office, established at the reorganization in 1836, has been steadily maintained to the present time. So far as the importance or the responsibility of the act extends, the review of an ordinary rejected application and that of a decision upon an interference are regarded as the same; each is a decision upon the testimony then before the office; and should anything then occur to arrest the execution of the judgment —as the filing of a caveat by another inventor, the arrival of a foreign journal announcing that the invention was patented abroad before the filing of the domestic application, or the filing of an application by another inventor—the commissioner considers himself bound by the spirit, if not by the letter, of the law to review or reverse his decision according to the testimony, whether the case be an ordinary rejected application or the decision on an interference. The former of these is almost of daily occurrence, while the latter is not without precedent. The noted case of interference between Coleman Coburn and a German by the name of Ferdinand Stark, in the Eolian attachment to the piano-forte, is a case in point. The following is the history of the case: In 1845 Coburn and Coleman each applied for a patent. An interference was declared between the inventions, and decided in favor of Coburn. But before the patent was issued, Stark applied for a patent for the same invention, and an interference was declared between the invention of Coburn and that of Stark, and the latter, by being permitted to go behind the printed publications of the day, by taking testimony in a foreign country, was declared to be the first inventor. But the counsel for Coburn (the Hon. Senator Berrien) submitted to the commissioner that an error had been committed in allowing the foreigner to go behind the printed publications, by taking testimony in a foreign country; the commissioner re-examined the subject in connection with the seventh section of the act approved July 4th, 1836, and became satisfied that he had before interpreted the act erroneously. A new day of hearing was appointed, and a new decision was made reversing the former, and the patent was finally granted to Coburn on the 1st of February, 1847. As to the fifth and sixth reasons of appeal, the act of 1839 (section 12) provides that the commissioner shall have power to make all such regulations in respect to the taking of evidence to be used in contested cases before him as shall be just and reasonable; and as this subject is intrusted to the discretion of the commissioner, it follows that the law will not disturb him in the exercise of his duties, so long as his rules of practice are neither unjust nor unreasonable. With respect to the eighth reason of appeal, the evidence adduced in the decision shows that Matthews used the invention in November, 1846, or about a year and three-quarters before the foreign patents alluded to were issued. The ninth and tenth reasons of appeal are inconsistent with each other and with the other reasons of appeal. As to the ninth, the claims show for themselves that the inventions of the two parties are identical, the concluding part of Matthews' claim not affecting its scope. The tenth reason presents the principal question before the judge.

R. H. Gillet, for appellant.

1. There is no statute giving the judge a power to order any of the reasons of appeal, which have been filed in the office in accordance to law, to be stricken out. If they are not valid reasons, the judge in his final judgment upon the whole case will overrule them, but they must be heard and considered.

2. The judge has jurisdiction of all questions which arise in the case. Bain v. Morse [Case No. 754]. Under the eighth section of the act of July 4, 1836, the jurisdiction of the board was not limited in anything. That section of the law gave them ample authority to review the decisions of the commissioner made under the seventh section. Whatever he might decide under it the board might examine. They were not confined to the third or fourth points; they could consider and reverse the whole. If their power stood on the seventh section alone, the jurisdiction would be ample; but under the eighth section, the authority given was still broader. By the eighth section it is enacted that if either of the conflicting applicants should be "dissatisfied with the decision of the commissioner on the question of priority of right or invention, on a hearing thereof he may appeal from such decision on the like terms and conditions as are provided in the preceding section of this act, and the like proceedings shall be had to determine which, or whether either, of the applicants is entitled to receive a patent as prayed for." By that act the board of examiners had perfect jurisdiction over the whole question. They might decide whether either of the contesting applicants is entitled to the patent, or which of them, or declare that neither of them shall have it. The judge stands precisely in the place of the board of examiners, and can do all that they could do. He has therefore a right to inquire into everything going to show whether Matthews or Wade is in this case entitled to the patent,

or whether it can lawfully be granted to either. The jurisdiction of the judge extends over the whole case—not only to the question who was the first inventor or true inventor, but every other question which touches the title of either party to the patent. If there is such a limitation as is contended for, it equally excludes any decision on the question of interference; that question, under the statute, stands on the same ground as all others.

3. The rules of the patent office are not binding on the judge. The question whether an application for a patent can be withdrawn and a new one put ih is not a question exclusively for the commissioner. He has no such discretion. A judge, after pronouncing judgment, cannot refuse to tax the costs and sign the roll on his mere personal discretion. There is not a word in the statute about discretion. It is this alleged discretion which has cast a cloud over this entire case.

The supervision of the judge is not confined to the testimony in the case. The act directs the commissioner in a case of appeal to send up everything in the case, that the judge may consider it. The eleventh section of the act of 1839 says "that the commissioner shall also lay before the judge all the original papers and evidence in the case, together with the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal, to which the revision shall be confined." The language shows that the judge is to review all that has been before the commissioner. If he was to be confined to the evidence alone, why was the commissioner required to send all the rest of the papers?

Edmund Burke, for appellee.

1. The first, second, third, fourth, fifth, sixth, seventh, eighth, and the latter part of the ninth reasons of appeal embody matter not within the jurisdiction of the judge sitting as a court of appeal from the commissioner of patents. The jurisdiction of the judge is limited by the eleventh section of the act of March 3d, 1839, by which he is substituted for the board of examiners provided for in the seventh and eighth sections of the act of July 4th, 1836. The act of 1836 confined the jurisdiction of the board of examiners to the particular grounds on which the commissioner refused the patent. It gave the board no authority to inquire into any of his previous acts, nor to surpervise the rules and regulations of the patent office or the usages and customs prevailing in that office in regard to the mode of transacting its business. The grounds upon which the commissioner was authorized to refuse a patent were—first, want of novelty; second, abandonment to the public by sale or allowing its use; third, want of utility or importance; fourth, want of a sufficient specification. These are the four grounds on which the commissioner was authorized to refuse a patent; and it was to these points alone

that the revision of the board of examiners was confined. They had no authority whatever to inquire into the matter. They could not inquire whether the proceedings before the commissioner had been informal and incorrect; whether a duty of $30 had been paid; whether a model had been duly deposited in the office or duplicate drawings been filed; or whether the application had been before made, and rejected, withdrawn, or renewed. On the contrary, their power was confined to the particular grounds of his decision, as stated by the law itself. And, therefore, inasmuch as the same jurisdiction, and that only which the board of examiners possessed, was transferred by the eleventh section of the act of March 3, 1839, to the judge, he cannot embrace in his review of the decision of the commissioner any other matters than those which were legally cognizable by the said board.

2. The eighth section of the act of July 4, 1836, provides, in the event of a conflict of inventions, for the proceeding called interference, and it gave the right of appeal from the decision of the commissioner to the board of examiners constituted by the eighth section of that act, to which right the judge succeeded by the eleventh section of the act of 1839. This jurisdiction, therefore, like that of the board, is confined to the question of priority of right or invention. He cannot go back to the question, and inquire into the correctness of the proceeding prior to his declaration of interference, nor can he inquire into the mere practice of this office, nor its rules, regulations, usages, and customs, or whether the commissioner has improperly, and not for good reason, refused a postponement or continuance of the hearing. If the judge were to assume this power, he would then in fact constitute himself the commissioner of patents, and the latter would in fact occupy the position of, and possess no more power than, a clerk under the judge. Congress in giving him jurisdiction over the decisions of the commissioner in certain specified cases, which must be his alternate and not his interlocutory decisions, never contemplated giving him unlimited power over the acts of the commissioner.

3. It is true that the judge in some of his former opinions intimates that his power extends to all the points involved in the reasons of appeal; but in these cases the question of jurisdiction was not expressly raised. The reasons required to be filed must relate exclusively to the particular matter appealed from and involved in the commissioner's decision. He cannot inquire into the mere ministerial acts of the commissioner. The board of examiners had no jurisdiction in such cases, and the commissioner can have none. Woodworth v. Stone [Case No. 18,-021]; Whittemore v. Cutter [Id. 17,600]; Ex parte Janney [Id. 7,209].

4. If the jurisdiction of the judge were coextensive with the "reasons of appeal," all

matters whatsoever might be brought within its embrace. The party appealing must thus compel the judge to inquire into and decide the question whether the examiner who examined the case had been duly appointed by the commissioner, and qualified by taking the oath required by law, or whether the commissioner himself was duly appointed and commissioned, or even whether the president of the United States, from whom the commissioner holds his commission, was duly elected and qualified according to the constitution.

5. If, as assumed in the first four reasons of appeal, the judicial power of the commissioner was exhausted by the first decision, and the matter is now res adjudicata, the remedy is not by appeal but by mandamus to compel the commissioner to exercise the ministerial duty of issuing the patent, or by impeachment for malfeasance. So, if the commissioner were about to issue a patent unlawfully for an invention patented abroad more than six months before filing the application in this country, the remedy is not by appeal, but by injunction.

6. The questions of utility and reduction to practice were decided by the commissioner before the question of interference was raised, and are not before the judge.

7. With regard to the fifth reason, the law gives no right to a party to be heard upon a motion to rehear. It is a matter entirely within the discretion of the commissioner, for reasons satisfactory to himself, to determine that the ends of justice require a rehearing.

8. With regard to the sixth reason, it is well established that a superior tribunal in proceedings at law has no power on appeal to reverse the decision of the inferior tribunal on a motion for a continuance arising under its own rules of practice.

9. Finally, the matter set forth in the reasons of appeal, above objected to, have not been appealed from, and are not properly before the judge. The only matter appealed from is the decision of the commissioner on the question of interference and novelty of invention, and others cannot be brought before the judge in this proceeding by way of assignment of errors.

10. The identity and priority of invention involved in the ninth and tenth reasons of appeal are admitted to be proper and legitimate subjects of inquiry in this proceeding.

CRANCH, Chief Judge. The first question is upon the motion of the appellee to order a certain portion of the reasons of appeal which had been filed in the office to be stricken out. The filing of the reasons of appeal is a proceeding in the office over which the judge has no control. The proceedings in the office are all under the superintendence and control of the commissioner, who is uncontrolled in the discharge of the duties of his office, except so far as an appeal is expressly given by law. No reason of appeal can be considered as valid which would not justify the commissioner in refusing the patent. If the commissioner has received and filed the reasons of appeal, the judge cannot order him to strike them out. They wait to be heard and decided; and when brought before him upon appeal, if they are not valid, he will overrule them.

The first reason of appeal is, in substance, that the commissioner, by deciding the question of interference in favor of Wade, and giving notice thereof to the parties, had spent all his power over the subject, and therefore had no power to act in the present case. This reason of appeal is answered by the opinion of the attorney-general, in which I fully concur. The same answer may be given to the second, third, fourth, fifth, sixth, and seventh reasons of appeal. They were matters within the discretion of the commissioner, and over which the judge had no control —no jurisdiction—these matters not having been made the subject of appeal nor valid grounds of appeal. As to the eighth reason of appeal, I doubt whether the English and French patents obtained by Wade, or for his benefit, even if obtained more than six months before Matthews' application, would be good cause for reversing the decision of the commissioner in favor of Matthews if he was the first inventor; but it appears by the proceedings in the office that the first application of Matthews was on the 12th of May, 1848; the English patent obtained by Wade was in July, 1848; and although Matthews' first application was withdrawn, yet it was instantly renewed in the same words, and must be considered as a continued application; so that six months had not expired after the English and French patents were issued before Matthews' application. But it seems that the foreign patents must be issued before the American discovery.

As to so much of the ninth reason of appeal as regards the practicability and usefulness of the invention, and the reducing of it to practice, these were matters for the consideration and within the discretion of the commissioner until the patent should be finally issued, and are not made the subject of appeal. Nothing preliminary to the issuing of the patent is a valid ground of appeal, unless made so by the law. The said first clause of the ninth reason of appeal and the tenth reason of appeal are proper subjects of appeal, and involve the merits of the case. The said first clause of the ninth reason denies the identity of the inventions, and the tenth avers that the evidence shows that Wade, and not Matthews, is the first inventor of the improvement claimed. The identity of invention is admitted by all the previous proceedings in the case, and particularly by the agreement of Matthews and Wade of the 12th of April, 1849, to use the testimony already taken. Exhibit C.

There is nothing left, therefore, but the

question of priority of invention involved in the tenth reason of appeal, and this plea depends upon the evidence. The question is not whether Wade made a better printing ink than that made by Matthews, but is, which of them first invented or discovered the application and substitution of rosin oil for linseed and all other oils in the manufacture of printing ink. The evidence is voluminous and intricate, and in some respects contradictory, and the question of priority of invention must of necessity be decided upon consideration of all the evidence "produced before the commissioner." The evidence is all in writing, and it cannot be necessary that I should point out any part of it as the particular ground of my decision. Upon a careful consideration of the whole of that evidence, I am of opinion, and so decide, that Thomas M. Matthews is the first inventor and discoverer of the application and substitution of rosin oil for linseed and other oils in the manufacture of printing ink, and therefore "is entitled to have a patent as prayed for."

[Subsequently, on October 1, 1850, letters patent No. 7.686 were granted to M. M. Matthews. For another case involving this patent. see the opinion of Johnson. Atty. Gen.. in Wade v. Matthews, 1 MacA. Pat. Cas. 145.]

MATTHEWS (WADE v.). See Case No. 17,-029.

MATTHEWS (WOOD v.). See Case No. 17,-955.

MATTHEYS (COOPER v.). See Case No. 3,-200.

MATTHIAS (The PIZARRO v.). See Case No. 11,199.

MATTHIESSON (UNION SUGAR REFINERY v.). See Cases Nos. 14,398 and 14,-399.